E-FILED
Friday, 31 July, 2026 04:16:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ANTON ASEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 25-1516 |
| | ) | |
| TED LEDBETTER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### MERIT REVIEW ORDER

Plaintiff, proceeding pro se and presently incarcerated at Menard Correctional Center, was granted leave to proceed *in forma pauperis*. The case is now before the Court for a merit review of Plaintiff's claims. The Court must "screen" Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### ALLEGATIONS

Plaintiff alleges events that occurred at Pontiac Correctional Center ("Pontiac"). The individuals he named as defendants all work at the facility in various capacities.

Plaintiff alleges that another inmate monopolized the gallery telephone for approximately

five hours on December 25, 2024. Plaintiff alleges that Defendant Malcome refused to remedy the problem, even after Defendant Dayton, a correctional lieutenant, directed him to do so. Plaintiff alleges that Defendant Dayton failed to ensure his order was executed. Plaintiff alleges that he became homicidal and otherwise suffered from emotional distress.

Plaintiff alleges that Defendant Sutter continued to allow the other inmate to monopolize the telephone the next morning after count, prompting Plaintiff to flood the gallery. Plaintiff alleges that he was suffering symptoms related to his mental health conditions, and that Defendant Dayton directed Defendants Baker and Sutter to take Plaintiff to crisis watch. Plaintiff alleges that Defendant Sutter first offered food if Plaintiff calmed down and agreed to forego crisis watch, and, when Plaintiff declined, Defendant Sutter refused to follow Defendant Dayton's orders. Plaintiff alleges that he flooded the gallery again and that Defendant Sutter told him to start a fire. Plaintiff alleges he started a fire in front of Defendant Ledbetter and suffered smoke inhalation.

Plaintiff alleges that he was taken to crisis watch at some point that evening or early on December 26, 2024, and that several officials and defendants agreed that Defendant Sutter lacked the authority to deny crisis watch and was wrong to do so. Plaintiff alleges that Defendant Jane Doe #1 failed to provide medical treatment for smoke inhalation. Plaintiff alleges that Defendants John Doe #10 and John Doe #11 searched his cell because of the fire, threw away $40.00 worth of commissary and non-contraband items, and failed to issue a shakedown slip. Plaintiff alleges that other inmates stole his property while he was on crisis watch. Plaintiff alleges that Defendant Jane Doe #2 and John Doe #6, both Internal Affairs officials, did not document his crisis watch.

Plaintiff alleges that he suffered from chest pains, heavy breathing, and productive

coughs resulting from the smoke inhalation from the date of the incident through May 2025. Plaintiff alleges that Defendant John Doe #7, the doctor, did not treat his chest pains or document "anything." Plaintiff alleges that he filed grievances regarding these events, only for them to disappear while Defendants Ledbetter and John Doe #8 were processing them. Plaintiff alleges that he lives in fear because of everything that occurred.

## DISCUSSION

### Denial of Access to a Telephone

A prisoner also has a First Amendment right to communicate with individuals outside the prison, subject to legitimate penological interests. *Felton v. Brown*, 129 F.4th 999, 1011 (7th Cir. 2025); *Lashbrook v. Hyatte*, 758 F. App'x. 539, 541 (7th Cir. 2019). Unreasonable restrictions on telephone access may violate the Constitution. *See Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991).

Plaintiff alleges that he was denied access to the telephone for at least five hours on one occasion. He does not allege that prison officials otherwise hindered his ability to communicate with individuals outside the prison or that the inability to use the telephone persisted for a significant time. The Court finds that Plaintiff fails to state a claim to the extent that he alleges a First Amendment claim related to the denial of access to a telephone.

### Denial of Medical and Mental Health Care

Inmates are entitled to adequate medical and mental health care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To survive screening under 28 U.S.C. § 1915A, a plaintiff must allege facts permitting a plausible inference that the prison official acted with deliberate indifference to a serious medical or mental health need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of

treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Plaintiff alleges that Defendant Dayton directed his subordinates to take Plaintiff to crisis watch. Plaintiff's allegations do not permit a plausible inference that Defendant Dayton knew

that the other officials were likely to disobey his orders, and to the extent that Plaintiff seeks to hold him liable solely because he was a supervisor, he does not state a viable claim.

Based on Plaintiff's allegations that officials later placed him on crisis watch and concluded that Defendant Sutter should not have disobeyed his lieutenant's orders, the complaint permits a plausible inference that Defendant Sutter consciously disregarded Plaintiff's need for immediate mental health treatment, allegedly opting instead to attempt to bribe Plaintiff to forego the request and then prodding him to create a dangerous situation. The Court finds that Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Sutter. Plaintiff's allegations regarding medical care he did or did not receive for smoke inhalation are too sparse for the Court to find that he states a constitutional claim.

### Cell Shakedown and Destruction of Property

Plaintiff's allegations that prison officials intentionally or negligently destroyed his property without issuing a shakedown slip permit only the inference that these actions were not taken pursuant to prison policy or were otherwise unauthorized. Individuals "who complain about the unauthorized loss or destruction of their property must seek compensation in state court rather than under § 1983." *Lyons v. Dart*, 901 F.3d 828, 830 (7th Cir. 2018); *see also Stewart v. McGinnis*, 5 F.3d 1031, 1036 (1993) (the Illinois Court of Claims provides an adequate remedy for the unauthorized destruction of property). Plaintiff's allegations that inmates stole his property are insufficient to permit a plausible inference that prison officials were personally involved. The Court finds that Plaintiff fails to state a claim based on the alleged destruction or theft of his property.

**Use of Grievance Process**

Prisoners do not have a freestanding constitutional right to the grievance process. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause."). Prison officials' alleged obstruction of Plaintiff's ability to complete the grievance process is relevant only to whether these remedies were available for purposes of complying with the PLRA's exhaustion requirement. The Court finds that Plaintiff fails to state a claim based on these allegations.

**PLAINTIFF'S MOTIONS**

**Plaintiff's Motion to Request Counsel (Doc. 5)**

Plaintiff has no constitutional or statutory right to counsel in this case. In considering the Plaintiff's motion, the court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

Plaintiff has not shown that he made a reasonable effort to obtain counsel on his own. A plaintiff usually does this by attaching copies of letters sent to attorneys seeking representation and copies of any responses received. Because Plaintiff has not satisfied the first prong, the Court does not address the second. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). Plaintiff's motion is denied with leave to renew.

**Plaintiff's Motion for Status (Doc. 10)**

Plaintiff's motion is granted. This Order addresses all pending issues. The next steps in the case are outlined below.

**IT IS THEREFORE ORDERED:**

1.      **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the court finds that the plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Sutter. Any additional claims shall not be included in the case, except at the court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

2.      **This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

3.      **The court will attempt service on the defendants by mailing each defendant a waiver of service. The defendants have 60 days from the date the waiver is sent to file an answer. If the defendants have not filed answers or appeared through counsel within 90 days of the entry of this order, the plaintiff may file a motion requesting the status of service. After the defendants have been served, the court will enter an order setting discovery and dispositive motion deadlines.**

4.      **With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.**

5.      **The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered.**

6.      **This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. The plaintiff must mail his discovery requests and responses directly to defendants' counsel. Discovery requests or responses sent to the clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance**

and the court has entered a scheduling order, which will explain the discovery process in more detail.

7.    Counsel for the defendants is hereby granted leave to depose the plaintiff at his place of confinement. Counsel for the defendants shall arrange the time for the deposition.

8.    The plaintiff shall immediately notify the court, in writing, of any change in his mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9.    If a defendant fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

10.    The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

11.    The clerk is directed to terminate Ted Ledbetter, Malcome, Dayton, Baker, John Doe V-XII, and Jane Doe I-II as defendants.

12.    The clerk is directed to attempt service on Defendant Sutter pursuant to the standard procedures.

13.    Plaintiff's Motion [5] is DENIED with leave to renew.

14.    Plaintiff's Motion [10] is GRANTED.

Entered this 31st day of July, 2026.


_s/Michael M. Mihm_
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE